# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **DEBORAH CLACKS o/b/o C.I.L.B.** | * | **CIVIL ACTION NO.  12-0893** |
| | | |
| **VERSUS** | * | **JUDGE JAMES T. TRIMBLE, JR.** |
| | | |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner of Social Security's denial of disability insurance benefits.  The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).   For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice**.**

### Background

On August 10, 2009, Deborah Clacks protectively filed an application for Supplemental Security Income (SSI) benefits as legal guardian on behalf of the minor child, C.I.L.B. (claimant), who was born in May 2007.  (Tr. 75-77, 86).[1]  Clacks alleged that C.I.L.B. has been disabled since birth because of hyperactivity, behavior problems, aggressiveness, and because she bites, pulls, and hits when she becomes upset.  (Tr. 80).  The claim was denied at the initial stage of the administrative process.  (Tr. 43-44, 48-50).  Accordingly, Clacks requested and received a

---

[1]  The court refers to the minor by her initials in accordance with LR 5.82W and the E-Government Act of 2002.

June 2, 2010, hearing before an Administrative Law Judge ("ALJ").  (Tr. 34-42).  By decision

dated August 4, 2010, the ALJ determined that the claimant was not disabled under the Act.  (Tr.

19-33).  Clacks appealed the adverse decision to the Appeals Council.  On February 24, 2012,

however, the Appeals Council denied the request for review; thus the ALJ's decision became the

final decision of the Commissioner.  (Tr. 1-3).

On April 16, 2012, Clacks sought review before this court.  She alleges the following

errors:

1)      the ALJ failed to make a determination as to her credibility; and

2)      the ALJ did not ensure that plaintiff knowingly and intelligently waived her right
        to counsel, thereby depriving plaintiff of a full and fair hearing, with resulting
        prejudice;

### **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the

ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa*

*v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is

supported by substantial evidence, the findings therein are conclusive and must be affirmed.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported

by substantial evidence when the decision is reached by applying improper legal standards.

*Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson*,

402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a

preponderance, it contemplates "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

2

Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Law

On August 22, 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. 104-193, 110 Stat. 2105, which amended 42 U.S.C. §1382c(a)(3). Pursuant to this law, a child under the age of eighteen is considered disabled for purposes of SSI benefits if "that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (1997).

The regulations set forth a three-step process for a child seeking benefits. First, the ALJ must determine if the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924. If the child is not so engaged, then the ALJ determines whether the child has a medically determinable impairment(s) that is severe. *Id*. An impairment(s) will not be deemed severe if it constitutes a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." *Id.* Finally, an impairment(s) that is severe also must meet, equal, or functionally equal a listed impairment. *Id*.

Under the regulations, the Commissioner considers the claimant's functional activities in terms of six domains: (1) acquiring and using information, (2) attending and completing tasks,

3

(3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  An impairment is deemed functionally equivalent to a listed impairment if it results in an extreme limitation in one domain of functioning or marked limitations in two domains.  20 C.F.R. § 416.926a(a).  When assessing functional limitations, the Commissioner considers all relevant factors including, but not limited to:

> 1)      How well [the claimant] can initiate and sustain activities, how much extra help [the claimant] need[s], and the effects of structured or supportive settings;
>
> 2)      How [the claimant] function[s] in school; and
>
> 3)      The effects of [the claimant's] medications or other treatment.

20 C.F.R. § 416.926a(a) (internal citations omitted).

An "extreme" limitation is assessed when the impairment(s) interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities.  20 C.F.R. §416.926a(e)(3).  Day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities.  *Id*.  An "extreme" limitation is equivalent to standardized test scores that are at least three standard deviations below the mean.  *Id*.  "Extreme" limitation, however, does not necessarily mean a complete lack or loss of ability to function.  *Id*.

The term "marked" may be established when a claimant's impairments seriously interfere with the claimant's ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2). "Marked" limitation also refers to a limitation that is more than "moderate," but "less than extreme."  *Id*.  A "marked" limitation is equivalent to standardized test scores that are at least two, but less than three standard deviations below the mean.  *Id*.

4

## Discussion

The ALJ determined that C.I.L.B. had not engaged in substantial gainful activity since the alleged onset date.  (Tr. 25).  He further found that C.I.L.B. suffers from severe impairments of Attention Deficit Hyperactivity Disorder ("ADHD") and speech delay.  *Id*.  The ALJ concluded, however, that these impairments neither met nor medically equaled a listed impairment.  *Id*.  Accordingly, he proceeded to consider whether C.I.L.B.'s impairments functionally equaled a listed impairment.

In so doing, the ALJ determined that C.I.L.B. suffered a marked limitation of functioning in the domain of attending and completing tasks, and a less than marked limitation in the domain of interacting and relating to others.  (Tr. 27-33).  He further found, however, that the claimant had no limitations of functioning in the four remaining domains.  *Id*.  Because the claimant did not have at least two "marked" limitations or one "extreme" limitation of functioning, the ALJ concluded that C.I.L.B. did not have an impairment that functionally equaled any of the impairments listed in Appendix 1, Subpart P, of Regulation No. 4.  (Tr. 25).

## I.     ALJ's Failure to Issue an Explicit Credibility Determination

Plaintiff contends that the ALJ committed reversible error because he failed to issue an explicit finding as to her credibility.  Citing non-binding decisions from other circuits,[2] plaintiff argues that the ALJ's omission compels remand here.  In the Fifth Circuit, however, "[p]rocedural perfection in administrative proceedings is not required as long as the substantial

---

[2]  *E.g., Williams o/b/o Williams v. Bowen*, 859 F.2d 255, 260-261 (2nd Cir. 1988), *Briggs o/b/o Briggs v. Massanari*, 248 F.3d 1235 (10th Cir. 2001), and *Smith ex rel. Enge v. Massanari*, 139 F. Supp. 2d. 1128 (C.D. Cal. 2001).

5

rights of a party have not been affected." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citing *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir.1988)).  Thus, even if an ALJ errs by failing to set forth any reason for her determination at one of the steps of the sequential evaluation process, the error may not require remand if it proves harmless.  *Id*.  Furthermore, in the context of an ALJ's alleged failure to make explicit determinations as to the claimant's credibility, the Fifth Circuit has excused the omission under circumstances where the ALJ discussed the plaintiff's allegations, and the record otherwise contains substantial evidence to support the ALJ's implicit credibility determination.[3]  Those circumstances are present here.

Plaintiff cites to various portions of her testimony that she contends support a finding of greater functional limitation than that accorded by the ALJ.  For instance, plaintiff testified that when C.I.L.B. becomes sufficiently angry at home, she will pull her hair out, the pain notwithstanding; dig her nails into her arms; and throw a fit on the floor.  (Tr. 39-40).  Plaintiff further testified that, although C.I.L.B. was doing a lot better at daycare while on medication, she still fought with the other kids.  *See* Tr. 40.

The ALJ, however, incorporated plaintiff's testimony into his analysis of the functional

---

[3]  *See e.g., Salgado v. Astrue*, 271 F. App'x 456, 463 (5th Cir. 2008) (unpubl.) (ALJ's discussion of the testimony provided sufficient rationale to support his implicit credibility finding); *Story v. Astrue*, 294 F. App'x 883, 884 (5th Cir. 2008) (unpubl.) (ALJ's failure to make explicit credibility findings as to plaintiff's testimony did not compel remand because the ALJ "clearly" considered plaintiff's claims and found them inconsistent with the medical evidence); *Haywood v. Sullivan*, 888 F.2d 1463, 1469–70 (5th Cir.1989) (distinguishing contrary Fifth Circuit decision in *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. Unit A 1981), and holding that ALJ's implicit credibility determinations were supported by substantial evidence).  In *Haywood*, the Fifth Circuit further held that although it would have been helpful had the ALJ provided an explanation to support his determination regarding the severity of plaintiff's pain, the ALJ's omission did not rise to the level of reversible error.  *Haywood*, 888 F.2d at 1470, n9.

limitations imposed by her impairments.  *See* Tr. 27-30.  Furthermore, although plaintiff argues that her testimony is supported by medical and school records, a closer, less skewed review of those records confirm that, rather than contradicting the ALJ's functional equivalence determination, they, in fact, substantially support it.

For example, in August 2009, plaintiff requested services and assistance on behalf of C.I.L.B. from the Early Steps program with the Office for Citizens with Developmental Disabilities (OCDD).  (Tr. 106-107).  To determine eligibility for the program, the provider administered several tests.  One such test was the Battelle Developmental Inventory 2nd Edition (BDI-2), which produced the following scores:  adaptive score – .27 standard deviations below the mean; social-emotional score – 1.4 standard deviations below the mean; communication score (overall) – 1.13 standard deviations below the mean; physical score – .33 standard deviations below the mean; and cognition – 2.4 standard deviations below the mean.  (Tr. 108, 126-128).  Although C.I.L.B scored lower in some sub-domains, the testing produced a score consistent with a marked limitation of functioning (*i.e.* at least two, but less than three standard deviations below the norm) in but a single domain, cognition.[4]  Furthermore, C.I.L.B.'s overall score on the BDI-2 was but 1.53 standard deviations below the norm.  (Tr. 126).

On August 18, 2009, plaintiff participated in the completion of the Ages & Stages Questionnaires:  a parent-completed, child-monitoring system.  (Tr. 115-120).  The questionnaire

---

[4]  The BDI-2 tests five domains, rather than the six domains considered by the Commissioner.  *See* Tr. 126.  The cognitive domain in the BDI-2 includes a sub-domain for attention and memory.  *Id.*  Although C.I.L.B. scored three standard deviations in the sub-domain of attention and memory, the BDI-2 was administered before C.I.L.B. began taking medication for her impairment(s).  *See* Tr. 211.  With the medication, plaintiff acknowledged that C.I.L.B. is able to remain calm, and can spend more time on things.  (Tr. 38).

produced scores which indicated that C.I.L.B. was doing well in the areas of communication and personal-social development; borderline in gross motor skills; and that she may need further evaluation in the areas of fine motor skills and problem-solving.  *Id*.

On August 26, 2009, plaintiff provided information for completion of the Biscuit test, which indicated that further evaluation was warranted to determine her diagnosis.  (Tr. 124-125, 129-135).

In April 2010, the Morehouse Parish School Board sent a letter to plaintiff, wherein it noted that C.I.L.B. had mild expressive language delay, with normal receptive language skills. (Tr. 150-153).  Her adaptive behavior and social emotional skills were in the low average to borderline range; her pre-academic and fine motor skills were in the low average range.  *Id*.  The School Board recognized a developmental delay exceptionality, and scheduled C.I.L.B. for speech language therapy.  *Id*.

On August 31, 2009. C.I.L.B. was seen by Herbert Vandenberg, M.D. for a neuropsychiatric evaluation that included a mental status evaluation.  (Tr. 210-213).  Vandenberg documented C.I.L.B.'s guardian-supplied history, as follows,

> recurrent behavior problems, throws fits, pulls her hair, digs into her arms, is very Hyperactive, Fidgety.  Unable to stay seated.  Is Restless.  Seems to be "On the go."  Talks excessively.  Is impulsive and Fearless.  Noisy, interrupts others.  Is aggressive (hits and punches others).  Demanding, argumentative.  Has frequent temper tantrums.  Frequent accidental injuries.  Spills things, breaks things.  Has difficulty falling asleep.  Wakes up at night crying.

*Id*.

Dr. Vandenberg diagnosed ADHD and prescribed medication.  *Id*.  However, despite the foregoing history provided by plaintiff, Vandenberg assigned a Global Assessment of Functioning ("GAF") score of 60, which denotes "**[m]oderate symptoms** (e.g. flat affect and

circumstantial speech, occasional panic attacks) **OR moderate difficulty in social,**

**occupational, or school functioning** (e.g., few friends, no friends, unable to keep a job).

*Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, DSM-IV, pg. 32.[5]

 Furthermore, on October 2, 2009, non-examining agency psychologist, William L.
Berzman, Ph.D., reviewed the record, including Dr. Vandenberg's assessment, and completed a
Childhood Disability Evaluation Form indicating that C.I.L.B.'s impairment did not result in a
marked or extreme limitation of functioning in any domain.  (Tr. 215-221).

 However, rather than adopting wholesale the assessment of the agency psychologist, the
ALJ ultimately determined that C.I.L.B. suffered a marked limitation of functioning in the
domain of attending and completing tasks.  (Tr. 29).  The ALJ assigned this greater degree of
limitation based, at least in part, on plaintiff's testimony at the hearing.  *Id*.  In other words, the
ALJ credited plaintiff's testimony.  Moreover, relying on the history provided by plaintiff, Dr.
Vandenberg characterized C.I.L.B.'s impairment(s) as imposing moderate limitations of
functioning.  *See* discussion, *supra*.  Of course, Vandenberg's initial examination was before
C.I.L.B. started medication, which plaintiff testified helped her condition.

 To the extent that it can be said that GAF scores do not translate mechanically into
functional limitations, the court observes that plaintiff's counsel submitted new evidence to the
Appeals Council, which included an attorney-supplied medical source statement for ADHD
completed by Dr. Vandenberg on February 10, 2011.  (Tr. 230-231).  Vandenberg indicated on

---

[5]  "GAF is a standard measurement of an individual's overall functioning level 'with
respect only to psychological, social, and occupational functioning.'"  *Boyd v. Apfel*,  239 F.3d
698, 701 n2 (5th Cir. 2001) (citing AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL
MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV)).

the form that although C.I.L.B. suffers from severe inattention, he believed that her impulsiveness and hyperactivity were but moderately limiting. *Id*. He also indicated that her social and personal functioning were mildly impaired. *Id*. When compelled by the form to rate C.I.L.B.'s degree of impairment by selecting one of four choices, "none," "mild," "marked," and "extreme,"Vandenberg indicated that C.I.L.B. was markedly limited in the areas of cognitive/communicative functioning, and in maintaining concentration, persistence, or pace. *Id*. However, on the second page of the form, where the four options were expanded to add a "moderate" classification, Vandenberg clarified his initial response by indicating that C.I.L.B. was moderately limited in each of seven areas, which included categories for deficiencies of concentration, persistence, or pace and for acquiring and using information. *Id*.

In the end, Dr. Vandenberg concluded in 2011, as he did with his initial GAF assessment in 2009, that C.I.L.B.'s impairments resulted in no more than moderate functional limitations. Dr. Vandenberg's assessment was premised on C.I.L.B.'s history, as provided by plaintiff. Nevertheless, despite this history, he opined that C.I.L.B.'s limitations of functioning were less than marked. Thus, even crediting plaintiff's testimony and allegations regarding the effects of C.I.L.B.'s impairments, they do not support a finding of greater limitation of functioning than that assigned by the ALJ. Therefore, to the extent that the ALJ erred by failing to make a specific determination regarding the credibility of plaintiff's testimony, any error was harmless.[6]

---

[6]  Stated differently, no one questions that C.I.LB. suffers from a severe impairment(s) that results in functional limitations. However, the school and medical records, which are premised on responses and history provided by plaintiff, confirm that, during the relevant period, C.I.L.B.'s functional limitations did not reach the disabling level. One hopes, for C.I.L.B.'s sake, that the early medical and educational support she is receiving will assist her in overcoming the significant challenges imposed by her impairment(s).

## II.      Waiver of Right to Counsel

Social security claimants have a statutory right to counsel at any social security hearing. 42 U.S.C. § 406 (2003).  Furthermore, a claimant is entitled to receive adequate notice of her right to counsel at an administrative  hearing.  *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003) (citing *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996).  "Adequate notice" requires that an ALJ apprise the claimant:  "(a) how an attorney can assist claimant in the hearing; (b) sources of free counsel and possibility of contingency arrangements; and (c) limitation of attorney fees to twenty-five percent of past due benefits."  *Gullett v. Chater*, 973 F.Supp. 614, 620 (E.D. Tex.1997) (citing *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir.1981)).  "Adequate notice" may be established by several written notices, plus oral confirmation by the ALJ that plaintiff wishes to represent herself.  *See Castillo, supra*.

Here, plaintiff received numerous written notices advising her of her right to representation.  *See* Tr. 53-66.  Moreover, on the day of the June 2, 2010, hearing, Clacks signed a waiver of representation wherein she stated that she:  understood her right to representation at the hearing, voluntarily waived that right, asked to proceed without a representative, and acknowledged that she had received a list of organizations that provide legal services prior to the hearing.  (Tr. 70).

At the hearing itself, the ALJ, as is his practice, stated in his opening remarks that plaintiff "appears *pro se* and has agreed to do so."  (Tr. 36).  This is the only mention of plaintiff's right to counsel anywhere in the transcript.  There is no indication whether the ALJ spoke with plaintiff concerning her right to counsel prior to going on the record.  While on the record, the ALJ did not ask plaintiff whether she had received the notices in the mail concerning

11

her right to representation.  The ALJ also did not ask plaintiff whether she understood the information contained in those notices regarding representation.  *See* HALLEX I-2-6-52, 1993 WL 643033.

In another similarly postured case, this court was unable to conclude that the claimant had validly waived her right to an attorney at the hearing.  *See Morris v. Astrue*, Civil Action No. 09-1833 (W.D. La. Oct. 29, 2010, R&R).  However, that does not end the inquiry.  When a claimant is unrepresented at the hearing, the ALJ's obligation to fully and fairly develop the record gives rise to a special duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (citations omitted). The ALJ's failure to develop an adequate record does not automatically compel reversal.  *Id*. Rather, "[a]s in the case of a hearing held without waiver of the right to counsel, the claimant must, in addition, show that she was prejudiced as a result of [sic] scanty hearing. She must show that, had the ALJ done his duty, she could and would have adduced evidence that might have altered the result."  *Kane supra* (internal

Clacks, who has been represented by counsel since shortly after the ALJ's decision, *see* Tr. 10, contends that had she retained counsel earlier, her attorney could have obtained reports from C.I.L.B.'s teachers, records from school-based therapy that was scheduled to start the week of the hearing, *see* Tr. 37, and medical records from Drs. Webb and Vandenberg.  Plaintiff's counsel eventually submitted C.I.L.B.'s medical treatment records from Dr. Vandenberg to the Appeals Council.  However, the Appeals Council found that the new evidence did not provide a basis for changing the ALJ's decision.  (Tr. 1-2).  Some of these records from Dr. Vandenberg were duplicates of matters already in the record.  In addition, Vandenberg's progress notes were

12

extremely brief, with little or no information relevant to the issues before the Commissioner. The only relevant portion of the evidence adduced by counsel was the medical source statement form completed by Dr. Vandenberg.  Properly considered, however, Vandenberg's medical source statement actually supports, rather than undermines, the ALJ's decision.  *See* discussion, *supra*.

Insofar as plaintiff maintains that she suffered prejudice as a result of the ALJ's alleged failure to obtain reports from C.I.L.B.'s teachers or updated school records, the court notes that the record contains a September 1, 2009, report completed by C.I.L.B.'s daycare teacher, Janice Fuller.  (Tr. 90-96).  However, the comments provided by Fuller are all but incoherent.  *Id*. Furthermore, the ALJ *did* obtain C.I.L.B.'s school records through April 2010, – *i.e.*, less than two months before the hearing date.  Those records merely confirm that C.I.L.B. had a mild expressive language delay, and was scheduled to receive speech language therapy.  (Tr. 150-153).

To the extent that some other school records exist, or could be produced to support disability, counsel has not produced them.  In the absence of this theoretical, but undisclosed evidence, the court cannot speculate as to its effect.  To establish prejudice, something more is required than an unsupported assertion that other tests or testimony might have made a difference.  *See Hyde v. Astrue*, Docket No. 07-30748 (5th Cir. May 12, 2008) (unpubl.).

Finally, insofar as plaintiff relies on the brief duration of the hearing (nine minutes) to demonstrate prejudice, the court observes that the brevity of a hearing does not alone establish that the ALJ breached his duty to develop the record.  *See James v. Bowen*, 793 F.2d 702 (5th Cir. 1986) (ten minute hearing not inadequate).

Thus, Plaintiff has not demonstrated that she was prejudiced by her decision to proceed

without counsel at the hearing, or relatedly, as a result of the ALJ's alleged failure to fully and fairly develop the record.

### Conclusion

The ALJ in this case was tasked with determining whether the claimant was disabled.  In so doing, he considered the hearing testimony, the school and medical records, and expert opinion evidence.  The evidence was not necessarily uniform, and according to plaintiff, should have compelled a different result.  However, conflicts in the evidence are for the Commissioner to resolve.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted).  This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*,  209 F.3d 448 (5th Cir. 2000).[7]  That is not to say that the ALJ's decision is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.

For the above-assigned reasons, the undersigned finds that the ALJ's conclusion that C.I.L.B. is not eligible for benefits because her impairments do not meet, equal, or functionally equal any impairment in Appendix 1 to Subpart P of Social Security Administration Regulations

---

[7]  Admittedly, this court has expanded upon some of the reasoning given by the Commissioner for her decision.  Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted).  One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result.  *Id*.  This exception is applicable here.  Further, the Fifth Circuit implicitly has sanctioned the federal courts' practice of assigning independent reasons for discounting newly adduced evidence.  *See e.g., Foster v. Astrue*, 2011 WL 480036 (5th Cir. Feb. 10, 2011) (unpubl.); *Garth v. Astrue*, 393 Fed. Appx. 196 (5th Cir. Aug. 26, 2010) (unpubl.).

No. 4 is supported by substantial evidence and remains free of legal error.  Accordingly,

      **IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, in its

entirety, and that this civil action be **DISMISSED** with prejudice.

      Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have

**fourteen  (14) days** from service of this Report and Recommendation to file specific, written

objections with the Clerk of Court.  A party may respond to another party's objections within

**fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or

response or request for extension of time shall be furnished to the District Judge at the time of

filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

      **A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE**

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

      THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 2nd day of April

2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE